IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ACCC INSURANCE COMPANY,<br><br>                  Plaintiff,<br><br>v.<br><br>TAMMY RENEE CARTER,<br>MELISSA P. AVERY DUMAS,<br>Individually and as Administrator of<br>the Estate of John Claire Dumas,<br>and CAMILLE DUMAS WATSON,<br><br>                  Defendants. | 1:09-cv-0230-WSD |

## OPINION AND ORDER

The matter is before the Court on the Motion to Dismiss or Stay Petition [6] filed by Defendants Melissa P. Avery Dumas and Camille J. Dumas (the "Dumases"), on the Motion for Joinder [8] filed by Tammy Renee Carter ("Carter") (collectively, the "Defendants"), and on Plaintiff ACCC Insurance Company's ("ACCC") Motion for Leave to File Surreply [16].

This case involves a question under Georgia law regarding an alleged bad faith refusal to pay an insurance claim. The unique question presented is this: When counsel for claimants against an insured party demands an insurer pay the face amount of the policy, but refuses to release the insured in return for the

insurance company's payment, does the insurer act in bad faith in paying policy limits without conditioning payment on release of its insured?

## I.     FACTUAL BACKGROUND

On April 29, 2006, shortly before midnight, defendant Carter was involved in an automobile accident in Decatur, Georgia. Decl. Judg. Compl. [1] at ¶ 10. Carter was driving intoxicated when the collision occurred. Joint Stipulation of Facts ("Joint Stip.") [21] at ¶ 1. John Dumas, husband of plaintiff Melissa Avery Dumas and father of Camille Dumas Watson, sustained serious injuries in the accident and was killed. Decl. Judg. Compl. ¶ 11. As a result of this accident, Carter pleaded guilty to driving while intoxicated and to homicide by vehicle. Joint Stip. ¶ 2. Carter is presently serving a 12-year sentence. Decl. Judg. Compl. ¶ 12.

ACCC issued Carter's automobile insurance policy that was in force at the time of the subject accident and that contained limits of coverage of $25,000.00 per person for bodily injuries. Joint Stip. ¶ 3. On August 9, 2006, counsel for Melissa Dumas and Camille Dumas Watson issued a settlement demand letter to ACCC under which the Dumases agreed to release ACCC, but not Carter, in exchange for a payment of Carter's $25,000.00 policy limit. Joint Stip. ¶ 4. The Dumases' settlement demand specifically stated:

> In consideration for payment of your policy limits, my clients will sign a release of [ACCC], its heirs, assigns, and affiliates, for the claims arising by virtue of the injuries to and death of John C. Dumas . . . . In addition, my clients do not agree to release Ms. Carter in exchange for the payment of her limits under your policy. My clients simply seek to exhaust the funds available through your policy, thereby releasing your company from liability, while reserving any claims they may have against Ms. Carter . . . . They will execute no release that directly or indirectly releases Ms. Carter.

Joint Stip. Exh. A. The Dumases' offer required a response by August 25, 2006.

On August 25, 2006, Mark McMasters, ACCC's insurance adjuster assigned to the Dumases' claim against Carter, agreed in writing to the Dumases' demand. Joint Stip. ¶ 5. His agreement letter stated: "We agree to the terms of your demand and had mailed the $25,000.00 settlement check to our counsel's office on or around August 11, 2006." Joint Stip. Exh. B. Prior to accepting the Dumases' demand, ACCC did not make a counteroffer which conditioned payment of Carter's policy limits on the Dumases releasing Carter. Joint Stip. ¶ 6.

ACCC now contends McMasters mistakenly agreed to the Dumases' demand. Id. ¶ 7. On August 29, 2006, ACCC tendered $25,000.00 and tendered a general release to the Dumases that would have released ACCC and Carter from further liability. Decl. Judg. Compl. ¶ 17. On September 25, 2006, counsel for the Dumases wrote to ACCC and reiterated the Dumases' position that they would not

release Carter from liability. Joint Stip. Exh. C. The letter stated: "At bottom, acceptance of my clients' demand does not actually make much of a difference for [ACCC]. My clients are not going to release Ms. Carter no matter whether the payment is made or not." Id. In October 2006, the Dumases filed suit against ACCC in the State Court of DeKalb County, Georgia, to enforce ACCC's settlement agreement. Joint Stip. ¶ 8.

In December 2006, ACCC agreed to pay Carter's $25,000.00 policy limits to the Dumases without securing a release for Carter, in exchange for dismissal of the Dumases' suit against it. Id. ¶ 9.

On October 24, 2007, the Dumases filed a wrongful death suit against Carter in the State Court of DeKalb County. Id. ¶ 10; Decl. Judg. Compl. ¶ 13. ACCC retained counsel to defend Carter against the wrongful death suit. Joint Stip. ¶ 11. ACCC offered the Dumases an additional $25,000.00 over and above the policy limits already paid if the Dumases would agree to release Carter, but the Dumases refused. Id. ¶ 12. In the course of litigation the Dumases proposed to Carter a settlement offer which included judgment being entered against her and assigning her rights against ACCC to the Dumases. Under the terms of this initial offer, Carter's personal assets would be subject to judgment if the Dumases were unable to collect judgment in a subsequent suit, as Carter's assignees, against ACCC. Id.

¶ 14. ACCC also offered to settle any claims Carter might have against ACCC related to the handling of the Dumases' claim against her. Id. ¶ 15.

The Dumases then proposed another settlement offer to Carter which included her consent to judgment and an assignation of her rights to sue ACCC, and the Dumases also agreed not to seek to collect their judgment out of Carter's personal assets. Id. ¶ 16. Carter accepted this offer. Id. ¶ 17. ACCC did not authorize Carter to enter into settlement negotiations with the Dumases. Id. ¶ 18. Pursuant to the settlement, Carter consented to a $4 million judgment against her and assigned her rights against ACCC to the Dumases. In return, the Dumases executed a covenant not to subject Carter's assets to judgment. Id. ¶ 19. Final judgment was entered against Carter on December 29, 2008. Joint Stip. Exh. M.

On January 27, 2009, ACCC filed this action. ACCC alleges Carter breached her duty under ACCC's insurance contract to cooperate with ACCC in any matter concerning a claim or lawsuit. ACCC also alleges the Defendants engaged in fraudulent conduct designed to manufacture a claim against ACCC. ACCC seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that it does not have any further liability to the Dumases, as assignees for Carter.

On January 30, 2009, the Defendants in this action filed suit against ACCC in the State Court of DeKalb County. They claimed ACCC and McMasters were

negligent in accepting the Dumases' settlement offer without also agreeing to a release of claims that could be made against Carter individually.

On February 24, 2009, the Dumases moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim or to stay the action pursuant to Fed. R. Civ. P. 57 during the pendency of the State Court action [6]. On February 26, 2009, Carter moved to join in the Dumases' motion to dismiss or stay [8].[1]

On February 27, 2009, ACCC and McMasters removed the Defendants' state court action to this Court. See Dumas et al. v. ACCC Ins. Co. et al., No. 1:09-cv-0548-WSD (N.D. Ga. 2009). ACCC and McMasters argued removal jurisdiction was appropriate through diversity jurisdiction. Also on February 27, 2009, McMasters filed a motion to dismiss for fraudulent joinder. The Defendants in this action moved to remand the case back to the State Court of DeKalb County.

On April 6, 2009, the Court dismissed McMasters for fraudulent joinder. The Court held McMasters could not be held individually liable for breaching duties of care and good faith owed by an insurer to its insured by virtue of the insurance contract. Since complete diversity of citizenship existed once McMasters was dismissed, the Court denied the motion to remand filed by the Defendants in this action.

---

[1] Carter's motion to join the Dumases' motion to dismiss or stay is not opposed by ACCC and is granted.

On April 6, 2009, the Court entered an Order consolidating Civil Action No. 1:09-cv-548 into this action.

On April 17, 2009, the Court held a teleconference with counsel for all parties in this action. During the telephone conference counsel for the parties agreed the facts in this matter generally were undisputed and that the action presented a question of first impression regarding duties of an insurer to an insured. The parties stated they believed they could stipulate to facts upon which the Court could decide the legal issues presented or consider whether the case warranted certification to the Supreme Court of Georgia [20]. At the conference, the parties and the Court agreed that if the parties stipulated to disputed facts, the Court would be able to either resolve the legal issue in this case or, if not resolvable, certify the issue to the Georgia Supreme Court.[2]

---

[2] The Court summarized the posture of the case this way: "THE COURT: But it seems to me that essentially there is really no dispute of facts. It's just whether or not this process that was engaged in by the plaintiff is one that allows them to assert the claim they want to assert, and I think that's a legal issue. So could you all come up with a stipulation of facts that could be submitted to me, I will make a determination on whether on the facts to which you have agreed upon which you think a legal issue can be resolved, or if not resolvable, could be certified." Apr. 17, 2009 Hr'g Tr. at 9-10. The parties essentially agreed to this characterization. Id. at 11-12. Counsel for the Dumases also raised what he stated is a disputed fact of whether the Dumases ever would have released Carter for ACCC's policy limits. Id. at 11. The Court considers that argument below.

On May 6, 2009, the parties filed their Joint Stipulation of Facts [21]. On May 11, 2009, each party separately communicated *ex parte* with the Court and explained what they believed the remaining legal issues in this case to be. The matter is now ripe for decision on the Defendants' Motion to Dismiss or Stay.[3]

## II. DISCUSSION

The parties' Joint Stipulation of Facts provides the Court with an adequate factual record to consider the legal issue about what duties ACCC owed to Carter and Carter owed to ACCC under the insurance policy issued to Carter and upon which the claims in this litigation are based. The Defendants in this case originally argued that ACCC's declaratory judgment complaint must be dismissed, or in the alternative stayed, because of the pendency of suit in the State Court of DeKalb County. They also argue the declaratory judgment complaint should be dismissed for failure to state a claim.

---

[3] On April 1, 2009, ACCC filed a motion for leave to file a surreply brief to the Defendants' Motion to Dismiss or Stay [16]. ACCC requests this surreply to rebut evidence the Defendants allegedly introduced for the first time in their reply brief, namely ACCC's confidential offer to Carter to settle her claims against it. The Court does not consider reply briefs as a matter of routine practice. LR 7.1C, ND Ga. The Court finds that ACCC's request for a surreply is effectively mooted by the Joint Stipulation of Fact, and the motion is denied.

### A. Governing Law

Dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). The court accepts the plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and considers the allegations in the complaint in the light most favorable to the plaintiff. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007). Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted). A declaratory judgment action is appropriate in this Court if the parties' dispute is, "definite and concrete, touching the legal relations of parties having adverse legal interests."

MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quotation marks omitted), see also 28 U.S.C. § 2201.

Under Georgia law, an insurance company has a duty "to use ordinary care and good faith in the handling of a claim against its insured . . . ." Metropolitan Prop. & Cas. Ins. Co. v. Crump, 513 S.E.2d 33, 34 (Ga. Ct. App. 1999) (quotations omitted). This obligation of ordinary care and good faith "arises out of the relationship between the insurer and the insured created by the contract or policy of insurance . . . ." Id. The contractual relationship between an insurer and its insured creates two independent duties of the insurer – a duty to indemnify and a duty to defend. Yeomans & Assocs. Agency, Inc. v. Bowen Tree Surgeons, Inc., 618 S.E.2d 673, 678 (Ga. Ct. App. 2005).

"An [insurer] may be liable for the excess judgment entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within the policy limits." Cotton States Mut. Ins. Co. v. Brightman, 580 S.E.2d 519, 521 (Ga. 2003). "Judged by the standard of the ordinarily prudent insurer, the insurer is negligent in failing to settle if the ordinarily prudent insurer would consider choosing to try the case [as creating] an unreasonable risk." Id.[4]

---

[4] The Defendants essentially agree with this principle of law, having quoted another Georgia Court of Appeals case reciting the same standards:

The insurer's duty to exercise good faith and ordinary care in evaluating settlement offers does not arise only on settlement demands within the policy limits. In <u>Delancy v. St. Paul Fire & Marine Ins. Co.</u>, 947 F.2d 1536 (11th Cir. 1991), the Court of Appeals for the Eleventh Circuit, after an exhaustive review of Georgia law, concluded that, "Georgia law does not clearly require the insured [or her assignee] to show that the insurer refused an offer within the policy limits to establish liability for tortious failure to settle, but it does not foreclose the argument that such an offer is required before the insured may recover." <u>Id.</u> at 1550. The court found that, "[a]t a minimum, however, Georgia law mandates that the insured show that settlement was possible – the case could have been settled

---

> An automobile liability insurance company may be liable for damages to its insured for failing to adjust or compromise the claim of a person injured by the insured and covered by its liability policy, where the insurer is guilty of negligence or of fraud or bad faith in failing to adjust or compromise the claim to the injury of the insured. Hence, where a person injured by the insured offers to settle for a sum within the policy limits, and the insurer refuses the offer of settlement, the insurer may be held liable to the insured to pay the verdict rendered against the insured even though the verdict exceeds the policy limit of liability. The reason for this rule is that the insurer 'may not gamble' with the funds of its insured by refusing to settle within the policy limits.

<u>Driskell v. Empire Fire & Marine Ins. Co.</u>, 547 S.E.2d 360, 366 (Ga. Ct. App. 2001) (quoting <u>McCall v. Allstate Ins. Co.</u>, 310 S.E.2d 513 (Ga. 1984)) (citations omitted).

within the policy limits – and that the insurer knew, or reasonably should have known, of this fact." Id. (internal citations omitted). The court applied this formulation in granting summary judgment for the insurer. Id. at 1558-59. Applying the Eleventh Circuit's formulation from Delancy, this Court previously found that an insurer could not be liable to its insured for tortious refusal to settle unless the insurer was on notice – i.e., that it knew or should have known – the case against its insured could be settled within the policy limits. Kingsley v. State Farm Mut. Auto Ins. Co., 353 F. Supp. 2d 1242, 1248 (N.D. Ga. 2005) (Duffey, J.).

**B.     Analysis**

The Defendants' primary argument for why ACCC's declaratory judgment action should be dismissed or stayed was the pendency of their negligence action in the State Court of DeKalb County against ACCC. See Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1331 (11th Cir. 2005). That state court action was removed to this Court and consolidated with this action, making the Defendants' motion to stay moot.

The Defendants also argue that ACCC's declaratory judgment action should be dismissed because governing Georgia law establishes that ACCC acted

negligently towards Carter in agreeing to settle the Dumases' claims only against ACCC.

The Court disagrees. Georgia courts have frequently stated liability may arise against an insurer for negligent or bad faith refusal to settle claims against its insured. For liability to arise, however, the insurer must at a minimum have the opportunity to settle claims against its insured within the insured's policy limits. Although Georgia courts do not appear to require that the insured receive an explicit settlement offer in order for it to be liable, the Eleventh Circuit and this Court have recognized that the insured must show settlement was possible – i.e., that the insurer knew or reasonably should have known settlement within the policy limits was possible – before the insurer can be held liable.

The stipulated facts of this case show otherwise. The Dumases' initial settlement demand on ACCC expressly stated the Dumases would not release Carter from liability. ACCC did not at that time have a realistic possibility to settle the Dumases' claims against Carter. ACCC later contested that it had agreed to settle the Dumases' claims, and, on September 25, 2006, the Dumases' attorney reiterated his demand: "At bottom, acceptance of my clients' demand does not actually make much of a difference for [ACCC]. My clients are not going to release Ms. Carter no matter whether the payment is made or not." Joint Stip. Exh.

C.[5]  ACCC never received from the Dumases a settlement offer within its policy limits in which the Dumases agreed they would in turn release Carter from liability.

ACCC likewise could not reasonably have believed settlement within the policy limits was a possibility.  The Dumases' claims against Carter exposed her to liability well in excess of her $25,000.00 policy limit.  The Dumases recognized this fact when they communicated their initial settlement offer to ACCC.  Even if ACCC had believed there was a small possibility it could secure release of Carter for the full amount of the policy limits, which was itself doubtful, the Dumases made it clear they would *not* release Carter for a policy limits settlement.  In fact, when ACCC initially attempted to secure Carter's release for $25,000.00, the Dumases filed suit to enforce their initial settlement agreement with ACCC.  The Dumases' further correspondence with ACCC consistently stated they would not release Carter from liability.[6]  That the Dumases ultimately agreed with Carter to

---

[5]  The Court notes the Dumases sued in the Superior Court of DeKalb County to enforce the settlement agreement they believed they reached with ACCC requiring ACCC to pay the $25,000.00 policy face value but without a release favoring Carter.  The evidence is undisputed that the Dumases demanded the policy limit, sued for it to be paid, and if paid were on record that they would not release Carter individually.

[6]  The Defendants' *ex parte* communication with the Court stated the Dumases "will provide affidavits showing, in fact, they would have released Carter had Mark McMasters, ACCC's adjuster, initially required such a release as a condition

value their claim in the amount of $4 million and now seek damages from ACCC confirms the Dumases' were at the time unwilling to release Carter from liability in return for the ACCC's policy limits.

ACCC raises a separate issue in its declaratory judgment complaint by claiming that it is not liable to Carter and her assignees because Carter breached her contractual duty to cooperate with ACCC in the provision of her defense to the Dumases' claims. See Decl. Judg. Compl. ¶¶ 36, 37-43. ACCC also claims it is immune from liability because Carter and the Dumases concocted a fraudulent scheme to expose ACCC to liability exceeding its policy limits. Id. at ¶¶ 44-49. The Defendants argue this case is about whether ACCC breached its duties to Carter as defined by the contractual policy obligations and by Georgia law.

Contrary to the Defendants' arguments, Georgia law does not expose ACCC to liability for the judgment against Carter because the stipulated facts of this case

---

of receiving the policy limits." The Dumases have not filed any such affidavits, and there is no evidence before the Court indicating the Dumases would ever have accepted a release of Carter in exchange for ACCC's policy limits. Even if such evidence existed, however, the Dumases' current proposed testimony is flatly contradicted by letters from their counsel to ACCC during settlement negotiations. The Dumases told ACCC the opposite – that they were in fact unwilling to settle their claims against Carter within the policy limits.

do not establish ACCC could have settled, or was on notice that it could have settled, the Dumases' claims against Carter within the policy limits.[7]

The Court originally expressed to the parties it would consider certifying the legal questions in this case to the Supreme Court of Georgia. The decision of whether to certify a question to the highest court of a state is a matter of discretion for federal courts. Escareno v. Noltina Crucible & Refractory Corp., 139 F.3d 1456, 1461 (11th Cir. 1998). The Court considers several factors in deciding whether to certify a question, including, "the closeness of the question and the existence of sufficient sources of state law to allow a principled rather than conjectural conclusion[,] . . . the degree to which considerations of comity are relevant[,] . . . [a]nd . . . practical limitations of the certification process." Id. (quotation omitted).

The Court determines not to certify the questions in this case to the Supreme Court of Georgia. Georgia courts have repeatedly stated an insurer is not negligent in failing to settle the claims of its insured unless the insurer receives an explicit settlement offer within its policy limits or knew or reasonably should have known settlement within the policy limits was possible. The Court is unaware of Georgia

---

[7] The Court's conclusion is confirmed by the fact that ACCC could have avoided the claims invented by the Dumases if it had simply interpleaded the face value of the policy when confronted with the Dumases' refusal to release Carter.

cases considering this precise question where an insurer accepts a demand at its policy limits without obtaining a release against its insured.  The Court is confident, however, that settled Georgia law precludes liability for ACCC in this case where the stipulated evidence establishes the Dumases (a) never offered to settle their claims against Carter within the policy limits and (b) explicitly stated, more than once, they refused to release Carter for a settlement at the policy limits.

The Court also determines in this case to enter judgment in ACCC's favor on this purely legal issue.  The parties agreed at the April 17, 2009 conference that the basic issue in this case, after stipulating salient facts, was a purely legal issue about whether ACCC could be liable because of its failure to procure a settlement release for Carter.  Apr. 17, 2009 Hr'g Tr. at 9-11.  The parties' stipulated facts and exhibits have now removed any confusion about the factual basis for these claims.  Their factual stipulations conclusively establish the Dumases did not offer to settle their claims against Carter within the policy limits and in fact at least twice told ACCC they would refuse any settlement for the policy limits releasing Carter.[8]

---

[8] The Dumases assert there remains a question of fact over whether they would have released Carter for a policy limits settlement if ACCC had simply counter-offered such a settlement.  Apr. 17, 2009 Hr'g Tr. at 6.  Their *ex parte* communication with the Court states they can provide affidavits showing, in fact, they would have released Carter if McMasters had required such a release as a condition of receiving policy limits.  The stipulated facts and exhibits completely discredit this new argument.  The Dumases' August 9, 2006 letter to ACCC stated

Based on these facts and the Court's interpretation of Georgia law, ACCC cannot be liable for Carter's claims against it. The Court enters declaratory judgment, pursuant to Fed. R. Civ. P. 57, that ACCC has no duty to provide coverage, defense, or indemnity to Carter for all or any portion of claims by the Dumases against Carter arising out of the motor vehicle accident on April 29, 2006, specifically including the Dumases' judgment against Carter arising out of that motor vehicle accident. The same legal conclusion requires dismissal of the Defendants' claims against ACCC, now consolidated in this case, because in light of the Court's ruling the Defendants do not state grounds for recovery against ACCC.

---

they would not execute any release that directly or indirectly released Carter. Joint Stip. Exh. A. On September 25, 2006, after ACCC attempted to secure a release for Carter in exchange for a policy limits settlement, the Dumases again wrote ACCC and stated unequivocally they were "not going to release Ms. Carter no matter whether the payment is made or not." Id. Exh. C. The Dumases later sued ACCC over this very issue. Georgia law provides ACCC cannot be liable for negligence in failing to settle a disputed claim of its insured unless it knew or reasonably should have known, at the time of settlement, that it could settle its insured's claims within policy limits. All the Dumases' communications with ACCC indicated otherwise. Since ACCC would have had no reason to believe settlement of the Dumases' claims against Carter was possible within the policy limits, it cannot be liable for failing to secure a settlement for Carter.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Dumases' Motion to Dismiss [6] is **DENIED**. Carter's Motion for Joinder [8] is **GRANTED**.

**IT IS HEREBY FURTHER ORDERED** that ACCC's Motion for Leave to File Surreply [16] is **DENIED**.

**IT IS HEREBY FURTHER ORDERED** that **JUDGMENT** is entered in favor of ACCC that it is not liable to the Dumases beyond the $25,000.00 policy limits already tendered and is not liable to Carter, or the Dumases as her assignees, for bad faith failure to obtain settlement for the Dumases' claims against Carter in <u>Dumas, et al. v. Carter</u>, No. 07A76689-3, in the State Court of DeKalb County, Georgia.

**IT IS HEREBY FURTHER ORDERED** that the Defendants' negligence complaint against ACCC, as consolidated from Civil Action No. 1:09-cv-0548-WSD, is **DISMISSED**.

**SO ORDERED** this 26th day of May, 2009.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE